395 Mich. 188 (1975)
235 N.W.2d 331
In re HUND ESTATE
HUND
v.
HOLMES
Docket No. 55672, (Calendar No. 6).
Supreme Court of Michigan.
Argued June 4, 1975.
Decided November 25, 1975.
Dahlberg, Mallender & Gawne (by Henry L. Woolfenden and Clarence J. Boldt, Jr.), for appellants Mildred A. Hund and others.
Norman P. Burau for appellee Madeline E. Holmes.
Decided November 25, 1975. Rehearing denied 395 Mich 923.
L.B. LINDEMER, J.
This lawsuit originated in Probate Court of Oakland County as a petition for construction of the last will and testament of Helen M. Hund. The petition was brought by the executor of Mrs. Hund's estate, the Detroit Bank and Trust Company, in order to determine whether testatrix had, by the language of the residuary clause in her will, exercised a testamentary power of appointment. The probate court determined that there had been a valid exercise of the power of appointment. Both the circuit court and the Court of Appeals affirmed that decision. This Court granted leave to appeal in order to consider the application of MCLA 556.114; MSA 26.155(104), to the facts of this case.
Testatrix's husband, Herbert L. Hund, died August 31, 1955. By the terms of his will, Mr. Hund placed his estate into two testamentary trusts, a "Marital Trust" and a "Residuary Trust". During her lifetime, Mrs. Hund was to receive the income from both trusts. Additionally, Mrs. Hund was
*193 "* * * given the unrestricted right and authority to direct the disposition of the corpus of said `Marital Trust' by the terms of her Last Will and Testament, to her estate or to such person or persons, and in such manner as she alone may elect."
Mr. Hund's will also contained an express gift in default, providing that if his wife failed to exercise this power of appointment, the corpus of the Marital Trust was to be combined with that of the Residuary Trust and distributed to his residuary beneficiaries.
Mrs. Hund died October 30, 1970. She left a will dated November 28, 1955, disposing of her entire estate through the following residuary clause:
"All the rest, residue and remainder of my estate shall be divided by my Executor into eight (8) equal parts, according to the value thereof as finally determined for Federal Estate Tax purposes, and as modified by the increase or decrease in value thereof of any marketable securities or other assets, from the date of my death to the time of distribution, which valuation shall rest solely in the discretion of said Executor and which entire residuary estate is hereby given, devised and bequeathed as follows * * *."
No express reference to the power of appointment or to any portion of the corpus of the marital trust appears in her will.
The dispute is between appellants, the residuary beneficiaries of Mr. Hund who would benefit by nonexercise of the power, and appellees, the residuary beneficiaries of Mrs. Hund who would benefit by an exercise of the power.
Under the common law, if the donee of a power of appointment, without expressly referring to the power, executes a general residuary clause in his will, the power is not exercised unless a contrary *194 intention to exercise the power can be sufficiently proven.
The Supreme Court of Connecticut, a state which follows the common law, has said:
"Under this rule, a testator will not be considered as having executed or having intended to execute a testamentary power of appointment unless the will contains `a reference to the power itself or to the subject of it, [or] unless the intention to execute [the power] is manifest from the fact that the will would remain inoperative without the aid of the power, or is so clearly demonstrated by words or acts * * * that the transaction is not fairly susceptible of any other interpretation.'" Morgan Guaranty Trust Co v Huntington, 149 Conn 331, 344; 179 A2d 604 (1962).
Other statements in accord are found in 15 ALR3d 346 and 62 Am Jur 2d, Powers, § 51, p 151.
The burden of proving intent is upon the party claiming exercise and it is generally accepted that in order for a will to exercise a power of appointment, the intent to exercise the power must be so clear that no other reasonable intent can be imputed to the testatrix under the will. Republic National Bank of Dallas v Fredericks, 155 Tex 79; 283 SW2d 39 (1955); Blagge v Miles, F Cas No. 1479 (1841).
Our Legislature enacted a statute modifying the common-law doctrine, creating a presumption in favor of an exercise of a power of appointment by the general language of a residuary clause. This statute, taken nearly verbatim from the State of New York, was the statute in effect at the time Mrs. Hund executed her will. It read:
"Lands embraced in a power to devise, shall pass by a will, purporting to convey all the real property of the testator, unless the intent that the will shall not operate *195 as an execution of the power, shall appear expressly, or by necessary implication." MCLA 556.53; MSA 26.143
This statute applies to both real and personal property. See Hutton v Benkard, 92 NY 295 (1883). That construction was considered by the courts below.
MCLA 556.53; MSA 26.143 was repealed by 1967 PA 224, which in turn was amended by 1970 PA 195. This pertinent successor statute, MCLA 556.114; MSA 26.155(104), which was in effect at the time Mrs. Hund died, reads:
"Unless otherwise provided in the creating instrument, an instrument manifests an intent to exercise the power if the instrument purports to transfer an interest in the appointive property which the donee would have no power to transfer except by virtue of the power, even though the power is not recited or referred to in the instrument, or if the instrument either expressly or by necessary implication from its wording, interpreted in the light of the circumstances surrounding its drafting and execution, manifests an intent to exercise the power. If the creating instrument explicitly directs that no instrument shall be effective to exercise the power unless it contains a reference to the specific power, an instrument which lacks such reference does not validly exercise the power. Subject to the foregoing, if there is a general power exercisable by will with no express gift in default in the creating instrument, a residuary clause or other general language in the donee's will purporting to dispose of all of the donee's estate or property operates to exercise the power but in all other cases such a clause or language does not in itself manifest an intent to exercise a power exercisable by will."
Which statute applies? It is the express intention of the Legislature that MCLA 556.114; MSA *196 26.155(104) must apply. MCLA 556.132; MSA 26.155(122) reads:
"The provisions of this act are applicable to any power existing on the effective date of this act, as well as a power created after that date."
By the provisions of her husband's will the power of appointment could not be exercised except by will. There is a general rule that a will speaks from the time of death, Kinney v Kinney, 34 Mich 250 (1876). The power of appointment was in existence and subject to 1970 PA 195. Even in the absence of express legislative intent, it has been held that the law in effect at the time of the exercise of a power of appointment controls its exercise, rather than the law in effect at its creation. Rhode Island Hospital Trust Co v Dunnell, 34 RI 394; 83 A 858 (1912).
MCLA 556.114; MSA 26.155(104) is a statutory rule of construction. It is important to remember that in an action for construction the sole objective is to ascertain and effectuate the intent of the testator as it appears from the language of the will. Resort to rules of construction is not permitted when the testator's intent is clearly expressed on the face of the will. However, if for some reason there is an ambiguity in the language utilized, and the intent of the testator is unkown or uncertain, courts must apply the rules of construction in their attempt to ascertain that intention.
Construction often requires an examination of the language of a will in light of extrinsic facts and circumstances surrounding a testator at the time he executed his will. When admitting extrinsic evidence, it is imperative that courts remember they may not venture beyond construing language in the will in order to discover intent. The use of *197 extrinsic evidence of facts and circumstances is limited to interpreting the words and phrases in the will.
It is readily apparent that MCLA 556.114; MSA 26.155(104) embodies these well accepted principles. The statute, when stripped of language which is not applicable to this case, reads:
"[A]n instrument manifests an intent to exercise the power if * * * the instrument * * * by necessary implication from its wording, interpreted in light of the circumstances surrounding its drafting and execution, manifests an intent to exercise the power. * * * Subject to the foregoing * * * a [residuary] clause * * * does not in itself manifest an intent to exercise a power exercisable by will." (Emphasis supplied.)
This statute restricts the use of extrinsic evidence to circumstances surrounding the drafting and execution of the instrument and prohibits the introduction of such evidence unless it explains or clarifies some "wording" of the instrument. It also declares that when the donor has provided for an express gift in default, the language of a residuary clause does not manifest the intent to exercise a power. The probate court purported to give effect to an intent not reflected in the wording of Mrs. Hund's will.
Appellees strongly argue that sufficient surrounding circumstances existed to support the probate court's finding that testatrix intended, by the use of a residuary clause, to exercise her power of appointment. However, appellees' argument is fatally flawed. The circumstances relied upon by appellees concern items such as testatrix's selection of an attorney, her choice of beneficiaries and distribution of estate, the prior law and the novelty of marital trusts in 1955. These items have *198 nothing to do with interpretation of wording used in the will. If a court is permitted to find some "necessary implication" sufficient to manifest an intent to exercise a power of appointment from the "wording" of a simple, garden-variety residuary clause, then the "but in all other cases" portion of the final sentence of the statute would be rendered meaningless.
The decisions of the lower courts are reversed and the case remanded to the Probate Court of Oakland County. Costs to appellants.
T.G. KAVANAGH, C.J., and LEVIN and FITZGERALD, JJ., concurred with LINDEMER, J.
WILLIAMS, J. (concurring in the result).
I concur in the result because MCLA 556.114; MSA 26.115(104), which applies in this case, specifically provides in pertinent part:
"if there is a general power exercisable by will with no express gift in default in the creating instrument, a residuary clause or other general language in the donee's will purporting to dispose of all of the donee's estate or property operates to exercise the power but in all other cases such a clause or language does not in itself manifest an intent to exercise a power exercisable by will." (Emphasis added.)
In this case the creating instrument did provide for an express gift in default. Since there is no specific exercise of the power "either expressly or by necessary implication from its [Helen M. Hund's will's] wording", the language of the statute indicating that a residuary clause purporting to dispose of all the donee's estate "does not in itself manifest an intent to exercise a power" is controlling.
*199 M.S. COLEMAN, J. (dissent).
I respectfully disagree with the opinion of the majority and would affirm the lower courts.
Those facts set forth in the majority opinion are accepted in so far as they are stated.
The principal issue is whether the residuary clause of Helen M. Hund's last will and testament is sufficient to exercise her power of appointment in accordance with MCLA 556.114; MSA 26.155(104) which was enacted after the execution of her will and less than three months before her death. That statute provides:
"Unless otherwise provided in the creating instrument, an instrument manifests an intent to exercise the power if * * * the instrument * * * by necessary implication from its wording, interpreted in the light of the circumstances surrounding its drafting and execution, manifests an intent to exercise the power." (Emphasis added.)
The decedent's will was dated November 28, 1955. She died on October 30, 1970. The statute in question was made effective as of August 6, 1970.
While a will does not take effect until death, intent of the testator is determined at execution. Morrow v Detroit Trust Co, 330 Mich 635; 48 NW2d 136 (1951). At execution of the will of testatrix, the statute involved in the instant case did not exist. The then-existing statute would have exercised the power of appointment under the residuary clause of the will. That statute provided:
"Land embraced in a power to devise, shall pass by a will, purporting to convey all the real property of the testator, unless the intent that the will shall not operate as an execution of the power, shall appear expressly, or by necessary implication."
*200 This statute was held also to apply equally to personal property. Townsend v Gordon, 308 Mich 438; 14 NW2d 57 (1944).
Oakland County Probate Judge Donald E. Adams and Circuit Judge Arthur E. Moore, both acknowledged experts in probate matters, concluded that the testatrix intended to and did exercise the power of appointment through the residuary clause of her will. Several factors and circumstances combined to effect this conclusion which the Court of Appeals affirmed and which I would affirm.
My colleagues fail in the application of several basic concepts to the facts of this case:
(1) It is a cardinal rule of will construction that the courts should strive to carry out the intent of the testator.[1]
(2) The will should be read as a whole and all provisions and circumstances existing at the time of the execution should be considered.[2]
(3) The court should not reverse unless the findings of fact are clearly erroneous[3] or the law is applied incorrectly.
I.
Although it is acknowledged that the statute in effect at the time of death controls, it is here necessary to consider the statute in effect at the time of signing the will as one of several "circumstances" bearing upon the intent of the testator.
A competent and experienced lawyer who had worked with the Hunds over the years prepared *201 Mrs. Hund's will after her husband's death. It may be presumed that the lawyer was cognizant of the applicable laws and applied them to carry out her wishes. There is good reason to believe that both the lawyer and Mrs. Hund knew the consequences of the will at the time of execution. No "contrary intention" was indicated in the will, so the statute existing at the time of execution would have caused the exercise of power.
It is also reasonable to believe that Herbert L. Hund knew exactly what he was doing when he placed two-thirds of his estate in a "Residuary Trust" with income to his wife during her lifetime and then to his heirs. Mr. and Mrs. Hund had no children. He placed the remaining one-third in a "Marital Trust" with income to Mrs. Hund for life. By this trust she was
"given the unrestricted right and authority to direct the disposition of the corpus of said `Marital Trust' by the terms of her Last Will and Testament, to her estate or to such person or persons, and in such manner as she alone may elect."
The net result was that about one-half would go to his relatives and one-half to her relatives or her designated beneficiaries. If Mrs. Hund failed to exercise the power of appointment as described above, an express gift in default would be combined with the corpus of the Residuary Trust to be distributed to Mr. Hund's heirs.
The will clearly provides for the method of appointment as statutorily provided at that time.
Several other circumstances surrounding the drafting and execution of Helen M. Hund's will are of importance:
1. Both husband and wife had worked hard and *202 prospered together. The probate court found as fact that both were active in the business and that they had sought advice and counsel from a competent law firm which drafted the estate plans and the instrument in question. It was natural that in effect Mr. Hund's trusts divided the estate into halves and that his Residuary Trust went to his heirs. The plain wording of the Marital Trust left the other half to his wife to dispose of as she would.
2. At the time the will was executed, Mrs. Hund had knowledge of her assets and the subjects of her bounty  primarily her heirs and two of her husband's relatives who had been kind to her and, so far as we can discern, continued to be close. The natural objects of Mrs. Hund's bounty were remembered in her will. It is natural that Mrs. Hund would wish to leave most of her estate to her side of the family, but Mr. Hund's heirs wish all but about one-sixth of the estate accumulated during the years of decedents' marriage.
To the contrary, the estate plan when formulated, assuming exercise of the power as then provided, would leave husband and wife with approximately equal amounts. Plaintiffs argue that Mrs. Hund's relatives are in Canada but Mr. Hund's relatives live in Detroit, so would be more natural recipients of her bounty. This argument is not persuasive. There is no indication that this is a situation new since decedent's will was executed, yet she willed most of her estate to them in 1955. Also, a relative in Highland Park, Dallas or Miami  or Canada  would be in no degree less a blood relative with natural ties because of distance.
3. The fact that Mrs. Hund died not quite three months after the new statute became effective affirms the importance of the prior statutory provision as a "circumstance" of weight. It is not reasonable to presume conclusively that she knew of the changed law so that she would hurry out to change her will. Her age, physical disabilities and the short time prior to death lead to the conclusion that she did indeed wish her estate to be apportioned as planned at the time of will execution.
The intent of the testator is clear.
*203 II.
Appellant argues that the new statute provides a rule of evidence and that extrinsic evidence of circumstances surrounding the drafting and execution of such instrument may not be introduced unless it explains and clarifies "the wording" of the instrument.
Granted that this argument has merit, its conclusion does not easily follow under these circumstances.
First consider the words of the Marital Trust in light of the current statutory language, "unless otherwise provided in the creating instrument". Mr. Hund did provide a way to assert the power of appointment.
His plan should be honored.
Next, Mrs. Hund's will "interpreted in the light of the circumstances surrounding its drafting and execution" clearly sets forth her intent. Read as a whole and in relation to the circumstance of the law when it was written, she has exercised her power of appointment as intended.
The Legislature has been careful not to defeat the intent of testators. I would not defeat that purpose by such a restrictive use of "the wording". "Wording" is at the heart of this matter and this "wording" under the "circumstances" surrounding the execution of the will is determinative.
III.
This is said to be a close case subject to either conclusion. Although I do not agree, at a minimum we should find the conclusions of the lower courts not clearly erroneous. The intent of the testator should tip the scales.
I would affirm.
NOTES
[1] Mills v Butler, 364 Mich 422; 110 NW2d 817 (1961), In re Graham Estate 379 Mich 224; 150 NW2d 816 (1967), In re Charlton Estate, 9 Mich App 625; 157 NW2d 821 (1967).
[2] Hudson v Lindsay, 383 Mich 126; 174 NW2d 822 (1970).
[3] GCR 1963, 517.1.