*In re* FITZPATRICK ESTATE

FITZPATRICK v WOLFE

Docket No. 88476. Submitted December 3, 1986, at Grand Rapids. Decided April 7, 1987.

Mary Agnes Fitzpatrick died testate, leaving a will with a residuary clause leaving the residue of her estate to her "remaining Brothers." At the time the will was executed, the testatrix had four living brothers and one deceased brother. Two of the four brothers living at the time the will was executed predeceased the testatrix. The brother who died prior to the execution of the will, Lloyd, left four children who were still alive at the time of the testatrix's death. Of the two brothers who were alive when the will was executed, but predeceased the testatrix, one, Irving, left no issue and the other, Frank, left one child, Colleen Wolfe. The will made specific devises to Irving. The residue of the estate was left to the "remaining Brothers." The will was offered for probate in the Alpena County Probate Court. The testatrix's surviving brothers, Robert T. Fitzpatrick and Emmet M. Fitzpatrick, claimed that by the use of the phrase "remaining Brothers," the testatrix meant surviving brothers, i.e., those who outlived her. Colleen Wolfe and Lloyd's four children contested that interpretation, claiming that the testatrix, by use of the phrase "remaining Brothers," meant to give the residue of her estate to her "other brothers," i.e., the brothers other than Irving, because he had been given specific devises and had no children. The court, Douglas A. Pugh, J., accepted the latter interpretation, finding that the deceased brothers were within the class of persons entitled to take under the residuary clause. Thus, in accordance with the antilapse statute, their children would take by representation in their place. The surviving brothers appealed.

The Court of Appeals *held:*

The probate court's construction of the will is not clearly

REFERENCES

Am Jur 2d, Wills §§ 1139, 1661 *et seq.*

Testator's intention as defeating operation of antilapse statute. 63 ALR2d 1172.

Devolution of lapsed portion of residuary estate. 36 ALR2d 1117.

erroneous. Having determined that the deceased brothers, Lloyd and Frank, were properly within the class of persons entitled to share the residuary estate, the probate court correctly decided that the antilapse statute prevented their bequests from lapsing. Accordingly, the probate court properly ruled that the children of the deceased brothers took in place of their fathers.

Affirmed.

1. WILLS — DESCENT AND DISTRIBUTION — ANTILAPSE STATUTE.

The antilapse statute will be applied to a testator's will unless the testator makes evident by clear and unequivocal language in the will that he desires to dispose of his property in a manner different from that contemplated by the antilapse statute (MCL 700.134; MSA 27.5134).

2. WILLS — DESCENT AND DISTRIBUTION — JUDICIAL CONSTRUCTION.

The law favors the construction of a will which will make a distribution most nearly in accordance with the statutes of descent and distribution as the language of the will will allow.

*Bean & Bean, P.C.* (by *Wiley E. Bean*), for appellants.

*Gillard, Bauer, Mazrum & Florip* (by *James L. Mazrum*), for appellees.

Before: D. F. WALSH P.J., and HOOD and R. J. TAYLOR,* JJ.

HOOD, J. Appellant brothers of Mary Agnes Fitzpatrick, deceased, appeal as of right from an opinion and order which construes the decedent's last will and testament. The probate court judge found that the testatrix's deceased brothers, Lloyd and Frank Fitzpatrick, were within the class of persons entitled to take under the residuary clause, and thus in accordance with the antilapse statute, MCL 700.134; MSA 27.5134, their children, the appellees, would take by representation in their place. We affirm.

* Circuit judge, sitting on the Court of Appeals by assignment.

There is no dispute between the parties as to the factual background and no testimony was offered by the parties below to aid in the interpretation of the will because no witnesses were known to either party who had any relevant information. The decedent executed her will on July 8, 1961. At that time she had four living brothers: appellants Robert Fitzpatrick and Emmet Fitzpatrick, and also Frank Fitzpatrick and Irving Fitzpatrick. A fifth brother, Lloyd Fitzpatrick, died in 1956 before the will was executed. At the time of her death in 1985, her only living brothers were the appellants. Irving predeceased the decedent, leaving no issue, and Frank left one child, appellee Colleen Wolfe. Lloyd left four children who survived the decedent and are the remaining appellees in this case.

The will is partially typewritten and partially handwritten. The pertinent provision for our inquiry states:

> THIRD: All the rest, residue and remainder of my estate, real, personal and mixed, of whatever nature and wherever situated, which I now own or may hereafter acquire, and to which I may be legally or equitable [sic] entitled at the time of my death, I give, devise and bequesth [sic] as follows:
>
> My share of the farm of which I am co-owner with my brother Irving to my Brother Irving solely.
>
> My car and whatever cash I possess to my Brother Irving.
>
> After all my funeral expenses, and any other debts I may have are paid, I request the remainder of the money be divided among my remaining Brothers. My diamonds are to be sold, and the cash to be divided among my Nieces and Nephews. The remainder of my personal things divided [?-illegible] among my sister-in-laws [sic].

It is not disputed that since Irving predeceased

the testatrix without issue, his specific devise and bequests lapsed and became part of the residuary estate. The central issue in this case revolves around the interpretation of the sentence, "after all my funeral expenses, and any other debts I may have are paid, I request the remainder of the money to be divided among my *remaining* Brothers." Appellants contend that by the use of the phrase "remaining Brothers" the testatrix meant *"surviving* brothers." Accordingly, they claim, since Robert and Emmet Fitzpatrick were the only two brothers to survive the decedent, all of the residuary bequest belongs to them to the exclusion of the children of Lloyd and Frank.

On the other hand, appellees argue that by the use of the phrase "my remaining Brothers" the decedent meant to give her residuary estate to her *"other brothers,"* that is, her brothers other than Irving. Reading the will this way, the appellees contend that Lloyd and Frank were within the class of persons entitled to the residuary estate and therefore, in accordance with Michigan's antilapse statute, their issue take in their place by representation.

The probate court judge accepted the position of the appellees. The judge reasoned that under Michigan law the antilapse statute will be applied unless the testatrix makes evident by clear and unequivocal language in the will that she desires to dispose of her property in a manner different from that contemplated by the antilapse statute. In this case, while the word "remaining" could reasonably mean brothers other than Irving, it could also reasonably mean surviving brothers. Since the will presents a reasonable doubt as to the testatrix's intent, the court found that the application of the antilapse statute was not avoided. The judge also concluded that the anti-

lapse statute operated to save the bequests of Lloyd Fitzpatrick, who died prior to the execution of the will, and Frank Fitzpatrick, who died after the execution of the will but before the testatrix, and to pass those bequests by representation to the appellees.

Findings of the probate court, sitting without a jury, are to be reversed by this Court only when clearly erroneous. *In re Burruss Estate,* 152 Mich App 660, 663-664; 394 NW2d 466 (1986); *In re Wojan Estate,* 126 Mich App 50, 53; 337 NW2d 308 (1983), lv den 418 Mich 873 (1983). While the cardinal rule of interpretation of testamentary instruments is that the intent of the testatrix governs if it can be discovered, where the intent of the testatrix is uncertain, courts must apply rules of construction. *In re Hund Estate,* 395 Mich 188, 196; 235 NW2d 331 (1975), reh den 395 Mich 923 (1976); *In re Dodge Trust,* 121 Mich App 527, 542; 330 NW2d 72 (1982), lv den 418 Mich 878 (1983). In this case the will creates a class gift, but the meaning of the phrase "my remaining Brothers" makes the composition of the class ambiguous. The current Michigan antilapse statute, MCL 700.134; MSA 27.5134, explicitly applies to class gifts[1] and states:

Sec. 134. (1)If a lineal descendant of a grandpar-

---

[1] Regarding class gifts, the statute is similar to § 2-605 of the Uniform Probate Code, see 8 ULA Master Edition, p 144, where the comment explains:

The section is expressly applicable to class gifts, thereby eliminating a frequent source of litigation. It also applies to the so-called "void" gift, where the devisee is dead at the time of execution of the will. This, though contrary to some decisions, seems justified. It still seems likely that the testator would want the issue of a person included in a class term but dead when the will is made to be treated like the issue of another member of the class who was alive at the time the will was executed but who died before the testator.

ent of the testator who is designated as a devisee or would have been a devisee under a class gift had the descendant survived the testator, fails to survive the testator, whether the devisee dies before or after the execution of the will, or is deemed to have predeceased the testator, the issue of the deceased devisee who survive the testator by 120 hours shall take in place of the deceased devisee by representation. A person who would be a devisee under a class gift if that person survived the testator is treated as a devisee for purposes of this section whether that persons's death occurred before or after the execution of the will.

(2) Except as provided in subsection (1), if a devise other than a residuary devise fails for any reason, it becomes a part of the residue.

(3) Except as provided in subsection (1), if the residue is devised to 2 or more persons and that share of 1 of the residuary devisees fails for any reason, his or her share passes to the other residuary devisees in proportion to their interests in the residue.

The rules for the construction of a will in light of the antilapse statute are to be applied "unless a contrary intention is indicated by the will." MCL 700.133(2); MSA 27.5133(2); *In re Burruss Estate, supra* at 665.

As the probate judge stated, the antilapse statute will be applied unless the testator makes evident by "clear and unequivocal language" in the will that he desires to dispose of his property in a manner different from that contemplated by the antilapse statute. *Rivenett v Bourquin,* 53 Mich 10, 12; 18 NW 537 (1884) (applying the predecessor version of the current antilapse statute). If there is "any reasonable doubt" about whether the testator intended to avoid the application of the statute, the "statutory construction must prevail." *Id.* The antilapse statute was in-

tended to remedy the common law situation where a devise/bequest to a close relative of the testator lapsed because the relative predeceased the testator and the testator had made no provision for such a contingency. *Strong v Smith,* 84 Mich 567, 571-572; 48 NW 183 (1891) (explaining purpose of the former antilapse statute). Rather than intending to allow the gift to lapse, it was assumed by the Legislature that the desire of the typical testator would be that the issue of the deceased relative should take in the relative's place if this unforeseen death occurred. *Id.* Accordingly, the current statute supplies a substitute taker (the issue of the deceased relative) where the relative would have taken under the will had he survived the testator even if the relative dies before or after the execution of the will.

In interpreting the will in the instant case it is evident that the probate court was faced with two plausible explanations of the meaning of the phrase "my remaining brothers." Appellants present several arguments suggesting that the phrase means "my *surviving* brothers." Most persuasive is their argument that it is not logical to conclude that by using the phrase "remaining Brothers," the decedent meant her "other brothers," especially if the court interpreted "other brothers" to include Lloyd, who was not living at the time the will was executed. They credibly argue that in drafting a will a testator would not use the phrase "remaining brothers" to include a brother already deceased.

The limited case law construing the word "remaining" is of little assistance. In *LaMere v Jackson,* 288 Mich 99; 284 NW 659 (1939), overruled on other grounds in *In re Brown Estate,* 362 Mich 47, 52; 106 NW2d 535 (1960), our Supreme Court despaired of giving a definite meaning to a para-

graph in a will containing the phrase "remaining brothers and sisters" and declared the paragraph void. Decisions in other jurisdictions have reached results which would support the positions of both sides. Cf. *Smith v Myers,* 212 Pa 51; 61 A 573 (1905) (interpreted phrase "the remaining children" to mean "other children" rather than "surviving children") and *Union National Bank v Bunker,* 232 Mo App 1062, 1066; 114 SW2d 193 (1938) (interpreted phase "remaining legatees in this paragraph" to mean "other legatees listed in the paragraph," not "surviving legatees") with *Henderson v Henderson,* 131 Md 308, 311-313; 101 A 691 (1917) (interpreted "remaining son" to mean "surviving son," not "other son") and *Marbury v Bouse,* 187 Md 106; 48 A2d 582 (1946) ("remaining children above named" interpreted to mean "surviving children"). This case law tends to prove only that the word "remaining" lacks the solid technical meaning attached to other words in the law of decedent's estates (e.g., "surviving").

Appellants also argue that, because the "remainder of the money" was to be divided among the "remaining Brothers" after the funeral expenses and other debts were paid, the testatrix only intended to leave property to people who survived her. They assert that the class is ascertained at the time of the testatrix's death and that the antilapse statute is inapplicable until the class is specifically identified at that time. Appellants point to *Eberts v Eberts,* 42 Mich 404; 4 NW 172 (1880), where our Supreme Court stated that a devise of property to the surviving children of brothers of the testatrix is to be construed as meaning those surviving at her death, and not those who were alive when the will was made. See also *Sturgis v Sturgis,* 242 Mich 52; 217 NW 771 (1928) (remainder to life tenant's sons, "if any

shall survive him," vested in sons surviving testa-
tor and not merely in sons surviving life tenant).
Indeed, citing these two cases, 23 Michigan Law &
Practice, § 194, p 500 states:

> Under an immediate gift to a class, unless there
> is a manifestation of a different intention on the
> part of the testator, membership in the class is to
> be fixed as of the time of the testator's death, so as
> to comprehend all answering the class description
> at that time.

However, 96 CJS, Wills § 695(1)(a), p 35 states that
determination of members of a class may also be
referable to the date of the will and adds that
"[t]he ascertainment of any class which is de-
scribed in a will should be referred to the earliest
possible period consistent with a fair interpreta-
tion of the will."

Appellants' other argument, that interpreting
"remaining Brothers" to mean brothers other than
Irving would result in an unintended and unequal
distribution of decedent's estate among her broth-
ers' families, is not so persuasive. As the appellees
urge, interpreting "remaining Brothers" to mean
brothers other than Irving would likely result in a
more nearly equal distribution of the decedent's
estate among the brothers' families than would
the appellants' proposed testamentary scheme. As-
suming the children of the brothers would nor-
mally inherit some of their fathers' estates, a
roughly equal distribution of the decedent's estate
would be achieved because the nieces and nephews
would each share in the portions of the decedent's
estate which would filter down through their fa-
thers' estates the specific bequests given to them
in the will. As appellants would have it, just two
of the brothers would receive the entire residuary

estate. Thus, assuming the appellants' children will inherit from their fathers, only some of the nieces and nephews would have the benefit of sharing in the portion of the testatrix's estate which they presumably would have inherited from their fathers.

Moreover, as the appellees state, the law favors the construction of a will which will make a distribution most nearly in accordance with the statutes of descent and distribution as the language will permit. *In re Horrie Estate*, 365 Mich 448, 454; 113 NW2d 793 (1962); *Gardner v City National Bank & Trust Co*, 267 Mich 270, 279; 255 NW 587 (1934); *Rivenett, supra* at 14. Under the law of descent and distribution, had the decedent died intestate, her residuary estate would have passed to the parties in this appeal in the same manner that it passed by applying the antilapse statute as the probate court did. MCL 700.106(c); MSA 27.5106(c). Thus, the probate court's construction is favored and the appellants' proposed construction is disfavored.

In summary then, faced with almost equally plausible arguments on each side, we cannot conclude that the probate court's construction of the will was clearly erroneous. Having determined that brothers Lloyd and Frank were properly within the class of persons entitled to share the residuary estate, the probate court correctly decided that the antilapse statute prevented their bequests from lapsing. Accordingly, the probate judge properly ruled that the appellees took in place of their fathers.

Affirmed.