GOWTHORPE v GOODWIN

1. Appeal and Error—Nonjury Trials—Finding of Fact—Standard of Review—Clearly Erroneous Test—Court Rules.

The standard of appellate review of findings of fact for nonjury trials is the clearly erroneous test (GCR 1963, 517.1).

2. Wills—Construction—Testator's Intent—Circumstances at Time of Execution—Finding of Fact—Appeal and Error.

The basic concepts in a will construction case are: (1) the court should strive to determine and carry out the intent of the testator, (2) the will should be read as a whole and all provisions and circumstances existing at the time of its execution should be considered, and (3) an appellate court should not reverse unless the findings of fact are clearly erroneous or the law is applied incorrectly.

3. Wills—Construction—Ambiguous Terms—"Issue"—"Children"—Testator's Intent.

A trial judge's conclusion that the word "issue" in a will was ambiguous and that the testator intended the term to be synonymous with the word "children" after looking at all the provisions of the will and interpreting them in the light of the applicable cases was a correct conclusion.

Appeal from Calhoun, Ronald M. Ryan, J. Submitted June 16, 1976, at Lansing. (Docket Nos. 23548, 23647.) Decided December 9, 1976. Leave to appeal applied for.

Complaint by M. F. Gowthorpe and others, as successor trustees of the estate of Walter S. Butterfield, deceased, and of the trust created under Butterfield's will, for construction of the term "issue" as used in a probated will. Judgment was entered construing "issue" to be synonymous with

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 839.
[2, 3] 80 Am Jur 2d, Wills § 1122 *et seq.*

"children" and ordering that during the life of the trust, income formerly distributed to Francis K. Berry, II, deceased grandson of the testator, should be paid to Paul A. Berry, Jr., and Susan Lee Berry, surviving brother and sister of Francis K. Berry, II, in equal shares, rather than to Frank A. Berry and David Berry, children of Francis K. Berry, II. Frank A. Berry, David Berry, Stewart S. McDonald and Mitties McDonald, great-grandchildren of the testator, and Caroline L. R. McDonald, grandchild of the testator, appeal. Affirmed.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *John E. S. Scott),* for plaintiffs.

*Honigman, Miller, Schwartz* and *Cohn* (by *John M. Kamins),* for Paul A. Berry, Jr., and Susan Lee Berry.

*Butzel, Levin, Winston & Quint* (by *Larry K. Griffis),* for Henry H. Sills, Guardian ad litem for David and Frank A. Berry.

*Allen, Worth and Hatch,* for Stewart S. McDonald, Mitties McDonald and Caroline L. R. McDonald.

Before: Bronson, P. J., and Beasley and D. Anderson, Jr.,* JJ.

Beasley, J. This case was commenced in Calhoun County Circuit Court for construction of the probated last will and testament of Walter S. Butterfield, deceased, by trustees of certain testamentary trusts created under the will.

Butterfield, who, during his lifetime, owned an

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

extensive chain of theaters in Michigan, died in 1936 leaving a will which had been carefully drawn by distinguished counsel and executed in 1933.

The narrow question arises under paragraph 27 of the will which provides as follows:

"27. Subject to the preceding annuities and conditions attached thereto, I direct my said trustees to pay out the net income from my estate as follows:

" 'To my wife, Irene Daley Butterfield, annually during her lifetime, thirty (30%) percent of said net income and the remainder of said net income to be divided in equal shares, and one share paid to each of my children, and if, during the lifetime of my wife, Irene Dailey [sic] Butterfield, any of my said children shall have died, leaving issue of him or her surviving, then the said issue shall receive the parent's share herein provided for, divided share and share alike, until the termination of said trust estate, as hereinafter provided.' "

The facts were stipulated and the case was tried carefully and thoroughly by able counsel for all interested parties. In a well-reasoned opinion, the trial court found, in part, as follows:

"Testator's widow, Irene B. Goodwin, and two of his children, Julia Scott Leonard and Anne B. Handley, are living. The above provision [that is, paragraph 27], therefore applies presently. One of his children, Helen Butterfield Berry, died in 1955, survived by four children (grandchildren of the Testator): Paul A. Berry, Jr., Susan Lee Berry, Frank K. Berry II and David S. Berry. While all four children were living, they shared equally in their deceased mother's income interest, pursuant to paragraph 27 of the Will. When David S. Berry died leaving no lineal descendants in January 1973 [sic], his one-fourth share in such income interest was distributed equally among Paul, Susan and Frank, who thereafter each had a one-third share in their deceased

mother's income interest, also pursuant to paragraph 27 of the Will.

"Frank K. Berry II died in December 1972, survived by two minor children (great grandchildren of Testator), three-year-old Francis Alexander Berry and three-month-old David Berry. It is here that the will construction problem arises.

"The trustees have now raised a question as to the future distribution of the share of income formerly paid to Francis K. Berry II under paragraph 27 of the Will.

"The problem of interpretation is presently focused upon the Berry line of the family. Respondents Susan Lee Berry and Paul A. Berry have averred in their respective pleading that the word 'issue' in paragraph 27 of the Will is restricted to the children of Helen Berry thereby excluding income distribution to all lineal descendants, except the grandchildren of the testator. Respondents Frank and David Berry assert that the testator used the word 'issue' in its generally accepted sense to mean all of his lineal descendants and, therefore, the income formerly distributed to their father, Francis K. Berry II, is presently payable to them.

"Caroline McDonald and her children are concerned in that if in the event the claims of David S. Berry and Susan L. Berry is *[sic]* upheld, it will mean that upon the death of Mrs. McDonald, income through the Mitties L. Rathbun line of the family would cease all together.

"The construction question posed by the Will, therefore, is whether 'issue' as used in paragraph 27 of the Will, designates 'children only' or 'lineal descendants of every degree'. It is this question which the petitioners herein have asked this Court to resolve.

\* \* \*

"The pertinent provisions of testator's Will are as follows:

" '27. \* \* \* [See quote above]

" '28. At the death of my said wife, Irene Daley Butterfield, the net income from said trust estate shall be divided and paid in equal portions to each of my children, or to the surviving issue of any deceased child, during the lifetime of the longest lived of said children.

" '29. If any of my said children have died without leaving issue, either during the lifetime of my said wife, Irene Daley Butterfield, or after her death, then the payment herein provided out of said net income to said so deceased child or children not leaving issue, shall cease and be considered as part of the net income of said estate, and be divided among the remaining children as though that child had not existed.'

"Paragraph 30 then provides that the trust terminates upon the death of the last surviving child of testator and makes provisions for distribution of the remaining trust assets.

*  *  *

"The word 'issue' is not a word of fixed meaning, and the sense in which the testator has used it may be the test for interpretation, and for such test the context will control. The term is to be given its legal import and is presumed to have been used in its generally accepted legal sense unless something is discovered in the Will clearly indicating a meaning inconsistent therewith. It is said that the term 'issue' is an ambiguous or equivocal term, 95 CJS § 666. [Footnote omitted.] In this case the word admits to two possible meanings:

" '1. "Issue" may mean only children of Helen Butterfield Berry, sharing equally in their deceased mother's income interest, or

" '2. "Issue" may mean lineal descendants of Helen Butterfield Berry, sharing in their deceased mother's income by right of representation.'

"It is true that in the absence of an intention to the contrary, the word 'issue' as used in a will generally means heirs of the body or lineal descendants, and as used in its primary sense may be either a word of limitation or purchase. *In re Horrie Estate,* 365 Mich 448 [113 NW2d 793 (1962)]; Lawrence v Westfield Trust Co, [1 NJ Super 423, 429]; 61 A2d 899, 902 (1948):

" 'It is true that the word "issue" as a general thing, means lineal descendants, indefinitely. But *whether it means descendants generally, or merely children, will depend upon the intention of the testator, as indicated by the context in which it occurs, or by the language of the entire will.' Arnold v Alden,* [173 Ill 229, 238–239];

50 NE 704, 708 (1898). (Emphasis added.) [Footnote omitted.]

"In its secondary or restricted meaning, as evidenced by a testator's intent, the word 'issue' may mean children only, and when it is used in such a sense it may be a word of purchase or limitation. See cases cited in *95 CJS at p 980.*

"We are therefore required to try to ascertain the true intention of the testator in the use of the word 'issue' in paragraph 27 of his Will.

\*     \*     \*

"When we consider the will as a whole, we are confronted with testator's provisions for distribution of the corpus of the trust estate. Testator provided for the corpus as follows:

" '30. At the death of the last survivor among my children and my wife, Irene Daley Butterfield, the said trust estate shall cease and the principal thereof shall be divided, distributed and *paid, share and share alike, to all of my grandchildren then living.* Provided, that if at (trust termination) there be \* \* \* still living any other annuitant mentioned in this will, then I direct my trustees to set aside out of the principal of the trust estate a sufficient amount of principal so that the income thereof will be sufficient to pay such \* \* \* annuitants during their lifetime, and at the death of each of such annuitants the principal so set aside \* \* \* shall be distributed among my grandchildren as provided for distribution of principal of this estate as hereinafter set forth. It being my intention and direction that all of my grandchildren then living shall share equally in such distribution. If at such time there are *no grandchildren living,* then I direct that said trust estate shall be distributed to my heirs \* \* \* .' [Emphasis added.]

"It appears clear to this Court that only *grandchildren* living at trust termination may share in corpus. Testator plainly stated: 'shall be paid, share and share alike' and shall share equally. As stated by the Court in *Rendle v Wiemeyer,* 374 Mich 30, 43 [131 NW2d 45] (1964):

" 'The intent of the testator \* \* \* was clearly stated

by him to be that all of his grandchildren were to share equally in the remainder estate. By apodictic language he provided that * * * his property was to go to his grandchildren "in equal shares". A per stirpes distribution would not accomplish this.' *Rendle v Wiemeyer, supra.*

"As to the division of corpus, great-grandchildren are excluded. Did the testator intend for them to take any of the income generated by that corpus during the life of the trust? It seem *[sic]* hardly likely. This problem of interpretation was before the court in the case of, *In re Horrie Estate,* * * * *[supra,* at 455], wherein the court in its opinion said:

" 'It is hardly likely that (a testator) would have intended income to be paid for any period to descendants who would not share in the distribution of corpus without positively expressing such intention.'

\* \* \*

"The Berry grandchildren assign another reason for determining the intention of the testator in using the term 'issue' in paragraph 27 of the Will. They make the following assertion:

" 'Testator's use of the term "parent" correlative with the term "issue" indicates his intention to signify the children of such parent rather than descendants of every degree.'

"It is pointed out there is a correlation between 'parent' and 'issue' in paragraph 27 of the Will. The testator provided that if during the lifetime of his wife:

" 'Any of my said children shall have died, leaving issue of him or her surviving, then the said issue shall receive the parents *[sic]* share herein provided for, divided share and share alike until the termination of said trust estate * * * '.

"The rule of construction asserted by the Berry grandchildren has been strongly criticized both here and in England by respected authorities. In *Dolbeare v Dolbeare,* 124 Conn 286, 289–290 [199 A 555], 117 ALR 687 (1938), the court stated that:

" 'As a definite rule of construction it now has arrayed against it such outstanding jurists as Justices Holmes and Cardozo; *Dexter v Inches,* 147 Mass 324,

325, 17 NE 551 [1888]; *Matter of Farmers Loan and Trust Co,* 213 NY 168, 172, 107 NE 340, 2 ALR 910 [1914]. "And 'It is not too much to say that there is a growing tendency to regard the fact that the word "issue" if used in correlation with the word "parent" and the like as merely a circumstance to be considered, and not to apply a definite rule of interpretation which in such a case would give it the meaning of children.' " '

"The courts have found that reference to 'parent' shows merely that the issue is to take his ancestor's share; in other words, specifying a *per stirpes* rather than a *per capita* distribution. * * * The *per stirpes* construction of the word 'parent' is also supported by the rule appearing in 3 Restatement of Future Interests, § 292, Comments, p 1545, where the authors conclude that 'the inclusion in a limitation of a clause providing, in substance, that "issue shall take their parent's share" is often made for the purpose of directing a per stirpes, rather than a per capita distribution, and when so used, has no tendency to cause issue to be construed to denote children'.

"The fact that the term 'issue' is made in correlation with the word 'parent' is merely a circumstance to be considered in determining the interest of the testator. *Dolbeare, supra.* See annotation in *117 ALR 691* at pages 701–703.

"It is possible that the testator or, of course, the scrivener, to have used the term 'children' in lieu of 'issue' might have confused the reference to testator's own children. Having utilized 'issue' in lieu of 'children', it appears that the scrivener may have referred to 'the parents share' instead of 'his or her share' to make clear that 'issue' was synonymous with 'children'. In any event, this Court has considered the correlation referred to as a circumstance in determining the intent of the testator in the instant case.

"The Berry grandchildren also assert that:

" 'Testator's use of the term "surviving" to qualify the term "issue" signifies that "issue" does not mean descendants of every degree.'

"In paragraph 27 of the Will, Testator prescribes that 'if * * * any of my said children shall have *died,*

*leaving issue of him surviving,* then the said issue shall receive \* \* \* .' (Emphasis added.) It is argued that the word 'surviving' following the word 'issue' must be given some significance. When Helen Butterfield Berry died in 1955, Frank Alexander Berry and David Berry had not been born and, therefore, she did not leave them surviving her. It is contended that only her four children fit within the description of 'surviving issue' and this amounts to more than the requisite slight indication that Testator intended 'issue' to mean 'children' only.

"The respondents other than Paul A. Berry, Jr. and Susan Lee Berry argue that:

" 'The class "issue" remains open to allow distribution of income to persons born prior to each payment of income.'

"It is pointed out that a class can increase in size until the period of distribution, but not after that time. This is the doctrine which has been labeled the 'rule of convenience'. [Footnote omitted.] It is also asserted that the 'rule of convenience' does not preclude the distribution of income to members of the class born subsequent to the date of the first distribution citing Casner *[Class Gifts to Others Than to "Heirs" or "Next of Kin"], Increase in Class Membership* [51 Harvard LR 254], 304 and other authorities.

"Counsel for the McDonald children point out that it is not uncommon for beneficiaries to be born after the testator's death and that Courts of other jurisdictions have gone a long way to be certain that legal heirs are not excluded in the absence of express intent. They refer to some cases in which the word 'children' has been interpreted to mean 'grandchildren' and, in other cases, the term 'grandchildren' to mean 'great-grandchildren'. [Footnote omitted.] It appears, however, that the cited cases involved partial intestacy and the question was whether the testator expressed an intention to disinherit heirs at law so that they could not share in property as to which the testator died intestate.

"As opposed to the application of these rules, counsel for the Berry grandchildren contends that the cited

authorities have no application to the language of paragraph 27 of the Will referred to above; that the words modifying the term 'issue' are crucially important; that the great-grandchildren of Testator such as Frank Alexander Berry and David Berry who were born more than a decade after the death of their grandmother, Testator's daughter, obviously were not left surviving her when she died; that with the class correctly defined, the authorities referred to are not applicable.

"As the McDonald family points out, it is possible that great-grandchildren who are descedents *[sic]* of Testator's youngest daughter may be living at her death and literally be left surviving her. If 'issue' means 'children', then the resulting unequal treatment among remote descendants of equal degree (*i.e.,* great-grandchildren) does not occur.

"This Court is not unmindful that it is pointed out that Testator did not use terms interchangeably or in a random matter; that when referring to classes of persons of the first degree, he used the word 'children' and when he intended persons of the second degree as in the gift of corpus in pp 30, he used the word 'grandchildren'. However, when we find that Testator used the word 'issue' in pp 29 of the Will, he, or his scrivener, used a word of *legal* usage and we must look at the Will and try and see whether the Testator has shown what he meant when he used this word.

"After reviewing all of the arguments of the parties presented in most excellent briefs and having regard to the entire context of the Will as a whole including its general scope, logical implications and necessary inferences, this Court finds that judgment should be entered declaring that the term 'issue' as used in pp 27 of the Will is synonymous with 'children'. Therefore, the share of income formerly distributed to Francis K. Berry, II, consequently should, during the life of the trust, be paid to Paul A. Berry, Jr. and Susan Lee Berry, grandchildren of Testator, in equal shares during the life of the trust so long as they both live and upon the death of either of them, to the survivor so long as he or she lives."

From the judgment entered pursuant to these findings of the trial court, appellants appeal as of right. In general, the standard of appellate review for nonjury trials is the so-called "clearly erroneous" test of GCR 1963, 517.1 which provides:

".1 Effect. In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. * * * Findings of fact shall not be set aside unless clearly erroneous * * * ."

However, in this case, the facts were stipulated by the parties. As indicated, the trial court's findings, while in a sense in the form of findings of fact, arose from application of case law to the stipulated facts.

The basic concepts in a will construction case of this kind are: 1) the court should strive to determine and carry out the intent of the testator, 2) the will should be read as a whole and all provisions and circumstances existing at the time of execution should be considered, and 3) the court should not reverse unless the findings of fact are clearly erroneous or the law is applied incorrectly. *In re Hund Estate,* 395 Mich 188, 200; 235 NW2d 331 (1975), *In re Charlton Estate,* 9 Mich App 625, 634; 157 NW2d 821 (1967).

The trial judge correctly concluded that the word "issue" is an ambiguous term which conclusion finds support in the cases. *Union Safe Deposit & Trust Co v Dudley,* 104 Me 297; 72 A 166 (1908), *Freund v Schilling,* 222 Mo App 901; 6 SW2d 673 (1928), *In re Tenney,* 104 App Div 290; 93 NYS 811 (1905), *Ralph v Carrick,* 11 Ch D 873 (1879), *In re Hawaiian Trust Co,* 29 Haw 278 (1926), *Arnold v Alden,* 173 Ill 229; 50 NE 704 (1898).

The trial judge looked to all the provisions of the will and interpreted them in the light of the applicable cases to decide that the testator intended the word "issue" as used in paragraph 27 of the will to be synonymous with the word "children". In so finding, the trial judge applied the law correctly and was not clearly erroneous in his findings of fact.

Affirmed.