*In re* BUTTERFIELD ESTATE

GOWTHORPE v GOODWIN

Docket Nos. 59276, 59277. Argued June 7, 1978 (Calendar No. 7).—
    Decided February 8, 1979.

The successor trustees of the estate of Walter S. Butterfield,
    deceased, M. F. Gowthorpe and others, brought an action for
    the interpretation or construction of the term "issue" in a
    testamentary trust in Butterfield's will, which had been pro-
    bated in 1936. The trustees ask for a direction for payment of
    income. Butterfield was married three times, and at the time
    the will was executed had five living daughters and five grand-
    children. The trust income is to be distributed among his
    children and their "issue", and when the trust terminates upon
    the death of the last of his wife and children, the corpus is to
    be distributed to his grandchildren. Francis Berry, a grandchild
    of Butterfield, died in 1972 leaving two children (great-grand-
    children of Butterfield), David Berry and Frank A. Berry,
    surviving. The plaintiff trustees raise the question whether the
    term "issue" of the testator's children means only their chil-
    dren (*i.e.*, Butterfield's grandchildren) or all of the lineal de-
    scendants of the children. The Calhoun Circuit Court, Ronald
    M. Ryan, J., decided that the term "issue" meant only children,
    so that Francis Berry's share of the income would be distrib-
    uted to his brother and sister, Paul A. Berry, Jr., and Susan L.
    Berry, rather than to Butterfield's great-grandchildren David
    and Frank Berry. The Court of Appeals, Bronson, P.J., and
    Beasley and Anderson, JJ., affirmed (Docket Nos. 23548, 23647).
    Butterfield's grandchild by his first wife, Caroline Louise R.

REFERENCES FOR POINTS IN HEADNOTES

[1] 80 Am Jur 2d, Wills §§ 1135, 1147.
[2] 79 Am Jur 2d, Wills §§ 65, 66.
    80 Am Jur 2d, Wills §§ 1279-1282.
[3] 80 Am Jur 2d, Wills § 1220.
[4] 80 Am Jur 2d, Wills § 1217.
[5] 80 Am Jur 2d, Wills §§ 1202, 1217.
    Word "grandchild" or "grandchildren" in will as including great-
        grandchild or great-grandchildren. 51 ALR3d 1250.
[6] 80 Am Jur 2d, Wills § 1158.

McDonald, and great-grandchildren Stewart S. McDonald and Mitties McDonald, and David Berry and Frank A. Berry, appeal. *Held:*

There is no ambiguity in this case; therefore the dispute is resolved by interpretation of the language within the four corners of the instrument. In general, different testamentary dispositions of a trust income and its corpus do not compel a finding that the terms of the testamentary instrument are inherently ambiguous. If it were to be considered inherently ambiguous, the result would interfere with the power to devise property. In this case the testator specifically designated certain persons to take income under the trust for life who were not to take from the corpus upon dissolution of the trust, despite the fact that they might survive the life of the trust. Because the will is not ambiguous, each word of the will must be interpreted in accordance with its clear meaning. The fact that it was drafted by an attorney, who is presumed to be skilled in the use of technical words, requires that those words be given their technical meaning. Thus, to the extent that either a statute or established common-law rule attributes a certain meaning to particular words, that meaning must be accepted. The statute specifically defines "issue" to mean all lineal descendants. Furthermore, the clear general meaning of the word necessarily leads to the conclusion that a great-grand-child in this case, as "issue", is entitled to the parent's share of the income under the will. There is no demonstrable intent to the contrary.

Reversed and remanded.

72 Mich App 648; 250 NW2d 514 (1976) reversed.

1. WILLS — CONSTRUCTION.

A dispute concerning the meaning of a will is resolved by interpretation of the language within the four corners of the instrument where there is no ambiguity.

2. WILLS — CONSTRUCTION — TESTAMENTARY TRUST — INCOME — CORPUS.

Different testamentary dispositions of a trust income and its corpus do not, in general, compel a finding that the terms of the testamentary instrument are inherently ambiguous; if it were to be considered inherently ambiguous, the result would interfere with the power to devise property.

3. WILLS — CONSTRUCTION — TESTAMENTARY TRUST — INCOME — CORPUS.

A testator may intend different recipients of income and corpus

of a testamentary trust; therefore, a provision for distribution of trust income to "issue" of deceased children of the testator and a provision for distribution of the corpus to "grandchildren" then living do not render the terms "issue" and "grandchildren" ambiguous so that they must be construed as referring to the same class of people.

4. WILLS — CONSTRUCTION — "ISSUE" — WORDS AND PHRASES — STATUTES.

The statutory definition of "issue" as applied to the descent of estates as all lawful lineal descendants of the ancestor codifies both the general and technical meaning of "issue" in this state (MCL 8.3h; MSA 2.212[8]).

5. WILLS — CONSTRUCTION — ISSUE — WORDS AND PHRASES.

A testator's great-grandchildren are "issue" entitled to income of a testamentary trust under a provision giving income to issue of deceased children where the will is not ambiguous, because the statute specifically defines "issue" to mean all lineal descendants, and the clear general meaning of the word necessarily leads to the conclusion that a great-grandchild, as "issue", is entitled to the parent's share of the income (MCL 8.3h; MSA 2.212[8]).

6. WILLS — CONSTRUCTION — ATTORNEY AND CLIENT.

The fact that a will was drafted by an attorney, who is presumed to be skilled in the use of technical words, requires that those words be given their technical meaning; thus, to the extent that either a statute or established common-law rule attributes a certain meaning to particular words, that meaning must be accepted.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *John E. S. Scott)* for plaintiffs.

*Honigman, Miller, Schwartz & Cohn* (by *John M. Kamins)* for Paul A. Berry, Jr., and Susan L. Berry.

*Butzel, Levin, Winston & Quint* for David Berry and Frank A. Berry.

*Allen, Worth & Hatch* for Caroline Louise R.

McDonald, Stewart S. McDonald, and Mitties McDonald.

WILLIAMS, J. This is an action for the interpretation or construction[1] of a testamentary residuary trust created by the Last Will and Testament of Walter S. Butterfield. The question in this case is whether the word "issue", used by the testator to define the class of income beneficiaries under the trust, refers to all lineal descendants, which would include great-grandchildren, or whether it is limited solely to grandchildren, *i.e.,* the testator's children's children. The trial court and the Court of Appeals found the class of income beneficiaries limited to grandchildren of the testator.

We reverse and find that "issue" under the circumstances of this case must be read more broadly to include all lineal descendants.

## I. FACTS

The facts of this case are not in dispute.

In 1933, Walter S. Butterfield, at age 65, executed his last will and testament. At that time he was married to his third wife, had five living

---

[1] Although the words "construction" and "interpretation" are frequently used interchangeably in regard to a court's duties in cases such as this, at least one legal treatise finds benefit in distinguishing between these terms.

"While the difference is not always recognized, it is helpful to draw a distinction between interpretation and construction. The former is the process of discovering the meaning or intention of the testator from permissible data. Construction, in its narrow sense, consists of assigning meaning to the instrument when the testator's intention cannot be ascertained from proper sources. If interpretation answers all questions relative to disposition of the testator's property, there is no need of embarking upon the field of construction. In other words, construction is necessary only when interpretation fails." Atkinson, Law of Wills (2d ed), ch 15, pp 809-810.

In the instant case we will analyze the will through interpretation of the document itself.

daughters[2] and six grandchildren. To date, there have been 19 grandchildren born[3] and 31 great-grandchildren.

The will was drafted by the Lansing law firm of Shields, Ballard, Jennings and Taber; the actual scrivener is thought to be Edmund C. Shields, who died in 1947.

Paragraphs 1 through 22 of the will make certain specific bequests. In paragraph 24, the testator created a testamentary trust for the distribution of the remainder of his estate. Paragraph 25 designates certain life-income and estate-for-years beneficiaries. Paragraphs 26 through 29 provide for the distribution of the remainder of the trust income and paragraph 30 provides for the dissolution of the trust and distribution of the corpus.[4] In

---

[2] A daughter, Mitties L. Rathburn, the only child of Butterfield's first marriage, had died in 1928. She was survived by one child.

Butterfield fathered four daughters during his second marriage: Laura Page, Caroline B. Allen, Helen Berry and Julia S. Leonard. His youngest daughter, Anne B. Handley, was the sole child of his third and final marriage.

[3] Of the 19 grandchildren, 16 are presently surviving.

[4] Paragraphs 25 through 30 of the will provide:

"25. Said trustees shall determine each year or oftener, if reasonably possible, the net annual income of said trust. If, for and during each year the net annual income of said trust equals or exceeds the sum of One Hundred Thousand ($100,000.00) Dollars, then I direct that said annual income shall be paid out and be disbursed as follows:

"(a) To Mrs. Anna Romigh, Mother of my wife, Irene Daley Butterfield, if she survives my wife, Irene Daley Butterfield, the sum of Two Hundred ($200.00) Dollars per month during her lifetime; and in the event that her husband, George Romigh, should survive the said Anna Romigh, then I direct my executors and trustees to pay to George Romigh the said sum of Two Hundred ($200.00) per month during his lifetime; provided that this annuity to the said Anna Romigh and George Romigh is in lieu of and full satisfaction of any and every claim which they or either of them might have against my estate, and if they or either of them file any claim against my estate, this annuity to become null and void and cancelled.

"(b) To my sister, Helen Cromley, during her lifetime, the sum of Two Thousand Six Hundred ($2,600.00) Dollars per year, provided the said Helen Cromley does not present any claim against my estate, and if she does present any claim against my estate, then this annuity and bequest to become null and void and cancelled.

"(c) To my sister, Grace Butterfield Jones, during her lifetime, the sum of One Thousand Two Hundred ($1,200.00) Dollars per year.

"(d) To my brother, Frank Butterfield and Edna Baum Butterfield, his wife, jointly and to the survivor of them, for his or her life, the sum of Five Thousand Two Hundred ($5,200.00) Dollars per year; provided the said Frank Butterfield and Edna Baum Butterfield, either jointly or severally, shall not present any claim against my estate, and if they do present any claim against this estate, then this annuity and bequest, as to both and each of them, shall be cancelled and be null and void.

"(e) To my brother, John Willard Butterfield, the sum of Six Hundred ($600.00) Dollars per year. At his death this annuity to cease and be null and void.

"(f) If my brother, Frank Butterfield, and his wife, Edna Baum Butterfield, die before either of their two children have attained the age of thirty (30) years, then I direct that to each of their said children there shall be paid the sum of Twelve Hundred ($1,200.00) Dollars per year until the beneficiary thereof reaches the age of thirty (30) years, and as to each of them as he or she reaches the age of thirty (30) years this annuity shall cease and be null and void. At their death, if occurring before reaching thirty (30) years of age, this annuity to become null and void.

"(g) To my daughter, Anne Butterfield, for her care, maintenance, and education, the sum of Twenty-four Hundred ($2,400.00) Dollars per year, which bequest, however, shall be cancelled when the said Anne Butterfield shall have completed her education, and in any event this bequest shall not extend for a period of time longer than when she shall have attained the age of twenty-four (24) years.

"26. (a) I further direct that if the net income from my estate is in any year less than the sum of One Hundred Thousand ($100,000.00) Dollars, and more than the sum of Fifty Thousand ($50,000.00) Dollars, then each of the annuities hereinabove described in paragraph 25 shall be reduced to fifty (50%) percent of the sums above named, except as to the provision in reference to Anne Butterfield, as referred to in subdivision (g) of paragraph 25, which shall remain in full force and effect.

"(b) I further direct that if the net income from my estate is in any year less than the sum of Fifty Thousand ($50,000.00) Dollars, and more than the sum of Twenty-five Thousand ($25,000.00) Dollars, then each of the annuities hereinabove described in paragraph 25 shall be reduced to twenty-five (25%) percent of the sums above named, except as to the provision in reference to Anne Butterfield, as referred to in subdivision (g) of paragraph 25, which shall remain in full force and effect.

"(c) I further direct that if the net income from my estate is in any year less than the sum of Twenty-five Thousand ($25,000.00) Dollars, then each of the annuities hereinabove described in paragraph 25 shall be cancelled and declared null and void for that particular year, except as to the provision in reference to Anne Butterfield, as referred to in subdivision (g) of paragraph 25, which shall remain in full force and effect.

particular, paragraph 27 provides:

"27. Subject to the preceding annuities and conditions attached thereto, I direct my said trustees to pay out of the net income from my estate as follows:

"To my wife, Irene Daley Butterfield, annually during her lifetime, thirty (30%) percent of said net income

"27. Subject to the preceding annuities and conditions attached thereto, I direct my said trustees to pay out the net income from my estate as follows:

"To my wife, Irene Daley Butterfield, annually during her lifetime, thirty (30%) percent of said net income and the remainder of said net income to be divided in equal shares, and one share paid to each of my children, and if, during the lifetime of my wife, Irene Daley Butterfield, any of my said children shall have died, leaving issue of him or her surviving, then the said issue shall receive the parent's share herein provided for, divided share and share alike, until the termination of said trust estate, as hereinafter provided.

"28. At the death of my said wife, Irene Daley Butterfield, the net income from said trust estate shall be divided and paid in equal portions to each of my children, or to the surviving issue of any deceased child, during the lifetime of the longest lived of said children.

"29. If any of my said children have died without leaving issue, either during the lifetime of my said wife, Irene Daley Butterfield, or after her death, then the payment herein provided out of said net income to said so deceased child or children not leaving issue, shall cease and be considered as part of the net income of said estate, and be divided among the remaining children as though that child had not existed.

"30. At the death of the last survivor among my children and my wife, Irene Daley Butterfield, the said trust estate shall cease and be dissolved and the principal thereof shall be divided, distributed and paid, share and share alike, to all of my grandchildren then living. Provided, that if at the death of the last survivor among my children and my wife, Irene Daley Butterfield, there be at that time still living any other annuitant mentioned in this will, then I direct my trustees to set aside out of the principal of said trust estate a sufficient amount of principal so that the income thereof will be sufficient to pay such annuitant or annuitants during their lifetime, and at the death of each of such annuitants the principal so set aside to furnish the income for that annuitant shall be distributed among my grandchildren as provided for distribution of principal of this estate as hereinafter set forth. It being my intention and direction that all of my grandchildren then living shall share equally in such distribution. . If at such time there are no grandchildren living, then I direct that said trust estate shall be distributed to my heirs then living in accordance with the Statute for descent and distribution of the laws of the State of Michigan."

and the remainder of said net income to be divided in equal shares, and one share paid to each of my children, and if, during the lifetime of my wife, Irene Daley Butterfield, any of my said children shall have died, leaving issue of him or her surviving, then the said issue shall receive the parent's share herein provided for, divided share and share alike, until the termination of said trust estate, as hereinafter provided."

The testator died in 1936, and for over 35 years trust income was distributed in amounts of 30 percent to Irene Butterfield Goodwin (the testator's widow) and 70 percent to the testator's five children, or per stirpes to grandchildren of the testator upon the death of one of the children. However, in December of 1972, Francis K. Berry, II, a grandchild of the testator, died leaving two children, three-month-old David and three-year-old Frank A. Berry, appellants herein. Francis K. Berry, II, succeeded to a portion of the trust income,[5] along with his brothers and sister, per stirpes, when his mother, Helen Berry, a daughter of testator, died. The death of Francis Berry, II, was the first time that a grandchild died leaving children, *i.e.,* great-grandchildren of the testator. The question then arose whether Francis Berry's share should be distributed per stirpes to his children, David and Frank (great-grandchildren of testator), or whether his share should go to his

---

[5] To demonstrate the substantial amount involved, each per stirpes share to the Berry children from March, 1973 through July, 1977, was approximately $39,000 (Helen Berry's youngest child died in 1972 leaving no lineal descendants, which left her three remaining children to share equally in her one-sixth share of 70 percent of the income).

Disregarding fluctuations in the trust income from year to year, the shares of all income beneficiaries under paragraph 27 of the will increased greatly due to the death of the testator's wife in 1977. Her 30 percent share of the income is now added back to the amount of income distributed to the "issue". See paragraph 27 of the will.

surviving brother and sister, Paul and Susan Berry, appellees herein.

In January of 1975, two years after the initiation of this suit, Caroline A. Bidwell, another grandchild of the testator, died leaving five children (great-grandchildren of the testator). The direction of distribution of Caroline Bidwell's share of income involves the same issue as Francis Berry's share, *i.e.,* whether Caroline Bidwell's share of income should go to her brother and sister or to her own children who are the great-grandchildren of the testator. As with the case of Francis Berry, the trustees are holding Caroline Bidwell's portion of income pending the outcome of these proceedings.

The trustees, who take a position of neutrality in this litigation, sought interpretation or construction of the will in the Calhoun Circuit Court in 1973. That court decided that the word "issue" as used by the testator was restrictive, *i.e.,* that "issue" was meant to only include children of the testator's children, or testator's grandchildren. The Court of Appeals affirmed the lower court's opinion. *Gowthorpe v Goodwin,* 72 Mich App 648; 250 NW2d 514 (1976). We granted leave to appeal June 2, 1977.

## II. Issue

The question presented in this action is the proper interpretation of the word "issue" in connection with testator's children in paragraph 27 of the will; whether "issue" as used in the will means all lineal descendants of testator's children, *i.e.* great-grandchildren of testator as well as grandchildren, or only grandchildren of the testator. If "issue" means all lineal descendants, then great-grandchildren would receive their parent's share

of income upon the parent's death. If "issue" is limited to grandchildren, then upon the death of a grandchild the income would be divided equally among the grandchild's siblings to increase their existing shares, or absent surviving siblings, it would be divided among the other children or grandchildren per stirpes.

## III. MEANING OF THE WORD "ISSUE"

The primary duty of any court faced with the task of resolving a disputed testamentary disposition is to effectuate as nearly as possible the intention of the testator. Where there is no ambiguity, that intention is to be gleaned from the four corners of the instrument, *In re Scheyer's Estate,* 336 Mich 645, 648-649; 59 NW2d 33 (1953); *Wheeler v Wood,* 104 Mich 414; 62 NW 577 (1895), and the court has merely to interpret and enforce the language employed. If the intention of the testator cannot be gleaned solely by reference to the instrument, in other words, if the document evidences a patent or latent ambiguity,[6] there are two external sources through consideration of which a court may establish the intent of the testator: (1) surrounding circumstances and (2) rules of construction. We find no ambiguity to exist in this case; therefore we resolve this dispute by interpretation of the language within the four corners of the instrument.

The dispute in this case arises because paragraph 30, dealing with the distribution of trust

---

[6] An ambiguity is "patent" if the uncertainty as to meaning "appears on the face of the instrument, and arises from the defective, obscure, or insensible language used". An ambiguity is "latent" "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates" the possibility of more than one meaning. Black's Law Dictionary (4th ed), defining "ambiguity".

corpus on dissolution, and paragraph 27, dealing with distribution of trust income, employ different language.

Paragraph 30, as set forth in full in footnote 4, *supra,* establishes that the trust shall be dissolved upon the death of the last survivor among the testator's wife and children. There is provision for the setting aside of sufficient amounts of principal to pay income to any possible surviving designated life annuitants, but beyond this, distribution of corpus is to be made to all *grandchildren* of the testator then living, or in the event of no living grandchildren, to the testator's heirs at law.

In contrast to this reference to grandchildren, paragraph 27, also set forth in full in footnote 4, incorporates reference to the payment of trust income to designated annuitants during their lives, authorizes payment of 30 percent of the net income from the trust to the testator's widow, and provides that the remainder of the net income from the trust (including, upon the death of the wife, her 30 percent life estate in the net income) be divided in equal shares for payment to Butterfield's children, and in the case of the death of a child who is survived by issue, then the issue are to receive and divide equally the parent's share until termination of the trust. [7]

As is discussed below, the word "issue" is defined in Michigan to mean all lineal descendants. As a consequence, there would be no question here but for the fact that the term "issue" is used in paragraph 27 to designate income distributees of the trust and the term "grandchildren" is used in paragraph 30 to designate corpus distributees on dissolution of the same trust.[8] Appellees assert

[7] "Issue" is also the term used in paragraphs 28 and 29. See footnote 4, *supra.*

[8] As stated in footnote 5, the testator's widow is already deceased.

that both terms are thereby rendered ambiguous and must be construed as referring to the same class of people, and that that class is limited to "grandchildren", excluding great-grandchildren.

We do not agree with appellees that the term "issue" is rendered ambiguous by the use of the term "grandchildren" in paragraph 30, but find that "issue" must be given its clear meaning and by law refer to all lineal descendants.

Although each case must be determined under its individual circumstances, in general, the testamentary disposition of trust corpus and trust income in different manners cannot logically compel a finding of ambiguity. See *In re Hicks Estate,* 345 Mich 448, 452-453; 75 NW2d 819 (1956). If such a testamentary scheme were to be considered inherently ambiguous, we would greatly increase the necessity of judicial construction of wills and unreasonably constrain the use of language presently considered clear and unambiguous; the net result would doubtless be interference with the longstanding and jealously guarded power to devise and bequeath. See MCL 702.1; MSA 27.3178(71) and MCL 702.4; MSA 27.3178(74).

Clearly, then, a given testator may intend different recipients of income and corpus, *In re Hicks Estate, supra.* Further, it is beyond dispute that in the instant case, at least as to certain income beneficiaries, this is exactly what the testator intended. The testator specifically designated certain life annuitants to take income under the trust while these same individuals were not to take corpus upon dissolution, despite the fact that they might survive the life of the trust.[9]

The sole surviving child is Anne B. Handley, who was three years of age at the time the will was executed. It is upon her death that the trust will be dissolved and the corpus distributed.

[9] Paragraph 25 provides income distribution to a mother-in-law,

In the instant case, because there is no ambiguity created under such a scheme, we must interpret each word of the will in accordance with its clear meaning.

"The authorities are overwhelming that when there is no patent or latent ambiguity in the provisions of a will, the intention to be ascribed to the testator is that intention demonstrated in the will's plain language." *In re Willey Estate,* 9 Mich App 245, 249; 156 NW2d 631 (1967).

In Michigan the meaning of "issue" is set forth in the statutes:

"The word 'issue' as applied to the descent of estates means all lawful lineal descendants of the ancestor." MCL 8.3h; MSA 2.212(8).

This statutory definition codifies both the general and technical meaning of "issue" in Michigan; it was in effect in 1933 when the will was drafted and remains in effect today.

Further, although external rules of construction are not necessary when interpreting the language of a will because the testator's intention can be gleaned from the four corners of the document, there are two qualifications or exceptions to this principal rule. Atkinson, Law of Wills (2d ed), ch 15, § 146, p 811. Even when we can arrive at the testator's intent by limiting our analysis to the document itself, these two qualifications apply:

"[I]f the testator employed a draftsman skilled in the

---

brothers and sisters who are clearly not to take distribution of corpus under paragraph 30. See footnote 4.

use of technical words these must be given their technical meaning. It is practically necessary that the testator's intent should be identified with that of the agent whom he employed to express the intent. Furthermore, to the extent that either a statute or established rule of decision attributes a certain meaning to particular words, that meaning must be accepted." (Authority omitted.) Atkinson, *supra*.

These qualifications and the facts that the will was drafted by a lawyer and the statute defines "issue" to comprise all lineal descendants, as well as the clear general meaning of the word "issue" in this state, lead us to the necessary conclusion that the great-grandchildren, as issue, are entitled to their parent's share of the income under paragraph 27 of the will.

## IV. CONCLUSION

Although we are impressed with the scholarly opinion of the trial court, we do not reach the same conclusion. In the case at bar, all available facts are stipulated by the parties and, therefore, we do not deal with findings of fact which are not set aside unless clearly erroneous, GCR 1963, 517.1, but with application of law.

The plain meaning of the word "issue" in this state leads us to the necessary conclusion that under paragraph 27 of the will, the great-grandchildren are intended "issue" entitled to income. We find no demonstrable intent to the contrary.

Reversed and remanded.

COLEMAN, C.J., and KAVANAGH, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.